UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LISA MARIE CORNELL,

Plaintiff,

-vs- 12-CV-1127-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

Defendant.

---

APPEARANCES:

JAYA ANN SHURTLIFF, ESQ.
Law Offices of Kenneth Hiller
Amherst, New York
Attorneys for Plaintiff

WILLIAM J. HOCHUL, JR.
United States Attorney, Western District of New York
(MARY K. ROACH, AUSA, of Counsel)
United States Attorney's Office
Buffalo, New York
Attorneys for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny. Item 15.

Plaintiff Lisa Marie Cornell initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), to review the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disabled Adult Child

---

[1]At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and was properly named in the complaint as the defendant under 42 U.S.C. § 405(g). On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure. For continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

("DAC") and Supplemental Security Income ("SSI") benefits, as provided for in Titles II and XVI of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff applied for DAC and SSI benefits on September 17, 2008, alleging disability due to learning problems and depression, with an onset date of December 31, 1998 (Tr. 101-104, 105-107).[2] Upon denial of the application at the initial level of agency review (Tr. 63-67, 68-72), plaintiff requested a hearing which was held on October 4, 2010, before Administrative Law Judge ("ALJ") William M. Weir (Tr. 28-60). Plaintiff appeared and testified at the hearing, and was represented by attorney Amanda Jordan.

On February 22, 2011, ALJ Weir issued a decision denying plaintiff's applications (Tr. 17-24). Following the five-step sequential evaluation process for determining eligibility for benefits under the Act, as outlined in the Social Security Regulations at 20 C.F.R. §§ 404.1520(a) and 416.920(a), the ALJ determined that plaintiff's impairments, while severe, did not meet or medically equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically, Listings 12.02 (Organic Mental Disorders) and 12.04 (Affective Disorders) (Tr. 19-20). The ALJ found that the evidence in the record, including school records, reports of consultative psychological and intelligence evaluations, behavioral health assessments, and the plaintiff's testimony at the

[2]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 6).

hearing regarding the limiting effect of her symptoms, demonstrated that plaintiff had the residual functional capacity ("RFC") to perform a full range of exertional work involving simple, repetitive tasks with normal assistance and supervision, with occasional contact with co-workers and the public (Tr. 20-23). Based on her age (21 as of the alleged onset date; 33 at the time of the hearing), education (8th grade; no GED), and work experience (part time; not "past relevant work"), and considering the effects of her non-exertional limitations[3] on the occupational base of unskilled work at all exertional levels, the ALJ determined that a finding of "not disabled" was appropriate under the framework of the Medical-Vocational Guidelines (the "Grids"), Rule 204.00 (Tr. 23-24). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00.

The ALJ's decision became the Commissioner's final determination on September 24, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-4). Plaintiff then filed this action on November 15, 2012, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), and the parties now move for judgment on the pleadings under Fed. R. Civ. P. 12(c).

In support of her motion, plaintiff contends that the ALJ failed to properly assess plaintiff's mental residual functional capacity; failed to properly assess plaintiff's credibility; and failed to obtain the testimony of a vocational expert to determine what jobs existing in significant numbers are available for an individual with plaintiff's limitations. *See* Items 14,

---

[3]"Nonexertional limitations" are defined in the Regulations as "limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, [which] affect only [the claimant's] ability to meet the demands of jobs other than the strength demands …." 20 C.F.R. § 404.1569a(c)(1). As pertinent here, examples given include: difficulty functioning due to nervousness, anxiety, or depression; difficulty maintaining attention or concentrating; and difficulty understanding or remembering detailed instructions. 20 C.F.R. § 404.1569a(c)(1)(i) - (iii).

18. The Commissioner contends that the ALJ's determination is supported by substantial evidence, and should be affirmed. *See* Item 15.

**DISCUSSION**

**I. Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *see also Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II. Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the Regulations set forth a five-step process to be followed when a disability claim comes

before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work (or, as in this case, the claimant has no past relevant work), the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets her burden of proof, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).

"In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

**III. The ALJ's Disability Determination**

In this case, ALJ Weir found at step one of the five-step sequential evaluation process that plaintiff had performed some work after the alleged onset date, but the work did not amount to substantial gainful activity that generated any Social Security earnings (Tr. 19). At step two, as indicated above, the ALJ found the evidence in the record sufficient to establish that plaintiff's mental impairments were "severe" within the meaning of the Regulations (*id.*).

At step three, the ALJ determined that plaintiff's impairments did not meet or equal the severity of a listed impairment, specifically considering the criteria for mental impairments under Listings 12.02 and 12.04 (Tr. 19-20). To satisfy the criteria of either of

these Listings, the claimant must show (among other things) that his or her mental impairment results in at least two of the following:

> 1. Marked restriction of activities of daily living;
>
> 2. Marked difficulties in maintaining social functioning;
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);
>
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(B), 12.04(B) (Paragraph "B" criteria). A claimant can also satisfy the criteria of either Listing by presenting a medically documented history of a chronic affective disorder of at least two years' duration, and one of the following:

> 1) Repeated episodes of decompensation, each of extended duration;
>
> 2) A residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensate;
>
> 3) History of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(C), 12.04(C) (Paragraph "C" criteria).

With regard to Paragraph B criteria, ALJ Weir found the evidence to show that plaintiff's mental impairments caused mild restriction in her activities of daily living; moderate difficulties in social functioning; moderate deficiencies of concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. 20). The ALJ found no evidence to satisfy any of the Paragraph C criteria (*id.*). Accordingly,

the ALJ determined that plaintiff's mental impairments did not meet or equal the severity of Listings 12.02 or 12.04.

The ALJ then determined at step four of the sequential evaluation that plaintiff had the RFC to perform the full range of work involving simple, repetitive tasks and occasional contact with co-workers and the public, at all exertional levels with normal assistance and supervision (Tr. 20-23). Because plaintiff had no past relevant work, the ALJ proceeded to step five, considering plaintiff's RFC, age, education, and work experience, in conjunction with the framework of Medical-Vocational Rule 204.00, and concluded that work existed in the national economy that plaintiff could perform (Tr. 23-24).

## IV. Plaintiff's Motion

### A. Residual Functional Capacity

Plaintiff contends that the ALJ's assessment of plaintiff's mental RFC did not comply with the requirements of the Regulations and Rulings—specifically, 20 C.F.R. § 416.945 and Social Security Ruling ("SSR") 96–8p. Section 416.945 provides basic guidelines for the adjudicator to follow in assessing the claimant's RFC, defined generally as "the most [the claimant] can do despite [his or her physical and mental] limitations." 20 C.F.R. § 416.945(a)(1). With regard to "mental abilities," the Regulation provides:

> [W]e first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 416.945(c).

SSR 96-8p was issued to clarify the Social Security Administration's policy regarding the assessment of RFC in claims for Disability Insurance benefits and SSI benefits. As stated in the ruling, the ALJ's RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including physical abilities (such as sitting, standing, walking, lifting, carrying, pushing, or pulling), mental abilities (such as understanding, remembering, and carrying out instructions), and other abilities affected by the impairments. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996) (citing subpar. (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945). SSR 96-8p also states that the assessment of mental RFC at steps four and five of the sequential evaluation process "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments …." *Id.* at *4. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6.

In assessing plaintiff's mental RFC, ALJ Weir relied on the reports of State agency consultative examiner Thomas Ryan, PhD., who performed a psychiatric evaluation and an intelligence evaluation of plaintiff in November 2008 (Tr. 163-170), and H. Tzetzo, M.D., the State agency psychiatrist who reviewed the record on December 4, 2008, and submitted a Psychiatric Review Technique Form ("PRTF") to assess plaintiff's limitations and restrictions in the categories identified in the "paragraph B" and "paragraph C" criteria

of Listings 12.02 and 12.04 (Tr. 171-201; *see* Tr. 23). On mental status examination, Dr. Ryan reported mainly normal findings (Tr. 163-165). Plaintiff was cooperative, although her manner of relating, social skills, and presentation were reported as "somewhat poor" (Tr. 164). She displayed adequate expressive and receptive language skills; coherent and goal-directed thought processes; mildly anxious affect; neutral mood; clear sensorium; and was oriented to person, place, and time (*id.*). Attention, concentration, and memory skills were intact, and insight and judgment were adequate (Tr. 164-65). Her cognitive functioning was reported as "[i]n the borderline range," with limited general fund of information (Tr. 164).

Intelligence testing revealed IQ scores ranging from 76 (performance) to 81 (verbal), and a fifth grade reading level, placing her in the borderline range of intellectual functioning (*see* Tr. 168-169). In Dr. Ryan's opinion, plaintiff had "no significant limitation in ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, [or] maintain a regular schedule" (Tr. 165). She displayed "[m]oderate limitation in ability to learn new tasks," but she could "perhaps perform some complex tasks" (*id.*). She displayed "no significant limitation in ability to make appropriate decisions or relate adequately with others," and was "[p]erhaps limit[ed] in ability to deal with stress" (*id.*). Dr. Ryan's diagnosis was Axis I: adjustment disorder with depressed mood, and Axis II: borderline intellectual functioning. He recommended that plaintiff consider counseling for her depression, and vocational training (*id.*; *see also* Tr. 169).

The ALJ also relied on the PRTF submitted by Dr. Tzetzo, indicating that the information contained in Dr. Ryan's reports and plaintiff's school records did not provide

evidence of mental functioning limitations of a level required to satisfy the paragraph B or C criteria of the Listings (*see* Tr. 195-96). In Dr. Tzetzo's opinion, plaintiff retained the mental functional capacity to perform work involving simple tasks (Tr. 197).

The opinions of State agency medical consultants, like Dr. Ryan and Dr. Tzetzo, can constitute substantial evidence to support an ALJ's RFC determination. *See, e.g., Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Banks v. Astrue*, 955 F. Supp. 2d 178, 188 (W.D.N.Y. 2013); *see also Leach ex. Rel. Murray v. Barnhart,* 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). The ALJ's reliance on the assessments and opinions of consultative sources is particularly appropriate where, as here, the assessments are supported by the weight of the evidence. *See Rockwell v. Colvin*, 2013 WL 3974168, at *5 (N.D.N.Y. Aug. 1, 2013) (citing *Brunson v. Barnhart*, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002)). Indeed, the reports and opinions of Dr. Ryan and Dr. Tzetzo constitute the only medical source evidence in the record upon which an assessment of plaintiff's mental RFC could be based.

Placing substantial reliance on these reports, the ALJ determined that plaintiff's adjustment disorder and borderline intellectual functioning caused mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, and pace; and no repeated episodes of mental deterioration (Tr. 23). Considering these restrictions, the ALJ determined that

plaintiff had the RFC to perform a full range of exertional work involving simple, repetitive tasks with normal assistance and supervision, and with occasional contact with co-workers and the public (*id.*). This determination is in accordance with the Commissioner's Regulations and Rulings, and as discussed above, is supported by substantial evidence.

Accordingly, plaintiff is not entitled to reversal of the Commissioner's decision, or remand for further consideration, on the ground that the ALJ failed to properly assess plaintiff's mental residual functional capacity.

**B. Credibility**

Plaintiff also contends that the ALJ failed to properly assess plaintiff's credibility with respect to the limiting effects of her mental impairments. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The Commissioner's policy interpretation ruling on this process states that:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ's detailed consideration of the evidence in the record included a discussion of plaintiff's testimony and statements about her symptoms, her treatment history and compliance, and her activities of daily living (Tr. 21-22). The ALJ specifically referred to a Horizon Health Services Mental Health Comprehensive Behavioral Health Assessment, dated August 14, 2009, indicating plaintiff's reports of depression, fatigue, crying, trouble sleeping, low motivation, and occasional memory problems. The ALJ further noted plaintiff's statement to the Horizon counselor that she was seeking work, and had not experienced difficulty performing work-like activity at her part-time job at Goodwill Industries. The ALJ also noted the results of a mental status examination performed upon plaintiff's admission at Horizon indicating "cooperative attitude, good eye contact, clear and coherent speech, euthymic effect, logical thought processes, appropriate thought content, full orientation, and good insight and judgment" (Tr. 22; *see* Tr. 214, 225). The ALJ also considered plaintiff's hearing testimony indicating that she felt her depression was due to the stress of caring for her three young children (Tr. 22); that she believed she could work

full time at the job she performed part-time at Goodwill; and that she could perform activities the tasks required of that job, as well as activities of daily living (Tr. 23).

The ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms complained of, plaintiff's statements concerning the intensity, persistence and limiting effect of her symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 22-23). The ALJ explained that, given the medical consultants' indications of mild to moderate restrictions imposed by plaintiff's mental impairments, and giving plaintiff the benefit of the doubt with respect to her alleged symptoms, the evidence of record reflects that plaintiff retains the functional capacity to perform a full range of simple, repetitive work with normal assistance and supervision (Tr. 23).

Based on this review, the court finds that the ALJ's credibility determination complies with the specificity requirements of the regulations and rulings outlined above, and is otherwise supported by substantial evidence in the record. Accordingly, plaintiff is not entitled to reversal of the Commissioner's decision, or remand for further consideration, on the ground that the ALJ failed to properly assess plaintiff's credibility.

**C. Testimony of Vocational Expert**

Finally, plaintiff contends that, given that her mental impairments resulted in solely nonexertional limitations, the ALJ erred by relying on the Grids as a framework for a finding of "not disabled," instead of calling on a vocational expert to testify as to whether there was work in the national economy that plaintiff could perform. In this regard, the Second Circuit has held that the appropriateness of applying "the grid guidelines and the necessity for

expert testimony must be determined on a case-by-case basis." *Bapp v. Bowen*, 802 F.2d at 605; *see* 20 C.F.R. § 404.1566(e) (Commissioner has discretion whether to use vocational expert). Generally, the cases have found that the ALJ must consult with a vocational expert where the claimant's nonexertional limitations "significantly limit the range of work permitted by h[er] exertional limitations …." *Id.* (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir.1983)).

> However, the "mere existence of a nonexertional impairment does not automatically ... preclude reliance on the guidelines." *Id.* at 603. A nonexertional impairment "significantly limit[s]" a claimant's range of work when it causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 605–06.

*Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010).

In this case, the ALJ determined that plaintiff's RFC allowed for a full range of unskilled work at all exertional levels. The ALJ noted that plaintiff's ability to perform work at all exertional levels was compromised by nonexertional limitations, but concluded that these restrictions would have little or no effect on the occupational base of unskilled work (Tr. 20, 24). As discussed above, there is substantial evidence in the record to support these findings. Thus, under the regulations, rulings and case law referred to herein, the ALJ properly relied on the Medical-Vocational Guidelines as a framework for decisionmaking, without consulting with a vocational expert, to satisfy the Commissioner's burden at the final step of the sequential evaluation to show that there exists work in the national economy that plaintiff can perform. *See Zabala*, 595 F.3d at 410-11; *Bapp*, 802 F.2d at 605-06.

## CONCLUSION

For the foregoing reasons, the court finds that the facts presented on the record in this case have been evaluated in the light of correct legal standards, and that the Commissioner's determination is based on substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings (Item 14) is denied, the Commissioner's motion for judgment on the pleadings (Item 15) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: April 16, 2014
p:\pending\2012\12-1127.mar21.2014